74 P.3d 575

STATE of Hawai'i, Plaintiff–Appellee,

v.

Amanaki L. VEIKOSO, Defendant–
Appellant.

No. 25182.

Supreme Court of Hawai'i.

Aug. 11, 2003.

220

Carrie Ann Y. Shirota, Deputy Public Defender, on the briefs, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ.; Circuit Judge SIMMS, Assigned by Reason of Vacancy; and ACOBA, J., Concurring Separately.

Opinion of the Court by MOON, C.J.

Defendant-appellant Amanaki L. Veikoso (Appellant) appeals from the May 29, 2002 judgment of conviction and sentence of the Circuit Court for the First Circuit, the Honorable Michael A. Town presiding, adjudging him guilty of habitually driving under the influence (DUI) of intoxicating liquor, in violation of Hawai'i Revised Statutes (HRS) § 291–4.4 (Supp.2000) [hereinafter, the habit-

1. Appellant was also charged, in Count II, with driving with a license that had been suspended, revoked, or restricted for DUI, in violation of HRS § 291–4.5. Appellant does not, however, challenge his conviction on Count II.

2. HRS § 291–4.4 has since been repealed. The current statute prohibiting habitual DUI·is codified at HRS § 291E–61. We note that the 2003

ual DUI charge]. On appeal, Appellant argues that the trial court erred in denying his motion to dismiss the habitual DUI charge after he had offered evidence in support of his allegation that the predicate DUI convictions were constitutionally invalid. The prosecution, relying on the judgment of this court announced in *State v. Shimabukuro*, 100 Hawai'i 324, 60 P.3d 274 (2002), concedes that dismissal of the habitual DUI charge was appropriate. Pursuant to *State v. Hoang*, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (prosecution's confession of error not binding on an appellate court), *cert. denied*, 94 Hawai'i 329, 13 P.3d 854 (2000), and based on our independent examination of the record, we hold that dismissal is not warranted and affirm Appellant's conviction.

## I. BACKGROUND

On May 10, 2000, Appellant was charged with habitual DUI.[1] HRS § 291–4.4 [2] provided in relevant part that:

(a) A person commits the offense of [habitual DUI] ... if, during a ten-year period the person has been convicted three or more times for a [DUI] offense; and

(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor[.]

*Id.* In order to meet its burden of proof, the prosecution relied on, *inter alia*, four prior DUI convictions entered against Appellant within the relevant time period.

On April 10, 2001, Appellant filed a "Motion to Strike Prior Convictions for Sentencing Purposes and Dismiss Count I [the habitual DUI charge]" [hereinafter, motion to dismiss]. Appellant's purpose in filing the motion to dismiss was to collaterally attack the validity of three of his underlying DUI convictions and preclude the prosecution

Hawai'i State Legislature recently passed H.B. No. 807, C.D. 1, which was enacted as Act 71 upon the approval of the governor on May 20, 2003. Act 71 amends HRS chapter 291E to provide for a new section defining the offense of habitual DUI and will take effect on January 1, 2004.

from using them to prove the habitual DUI charge.[3]

Following a hearing on the matter, the trial court found that three of Appellant's prior DUI convictions were obtained in violation of Hawai'i Rules of Penal Procedure (HRPP) Rule 11 and constitutional standards intended to ensure that a guilty plea is knowing and voluntary.[4] The trial court, however, denied the motion to dismiss after determining that the continued validity of the predicate prior convictions was irrelevant to establish culpability for the habitual DUI charge.[5]

On November 26, 2001, Appellant entered a conditional guilty plea, preserving his right to appeal the trial court's denial of his motion to dismiss. On May 29, 2002, Appellant was sentenced to five years of probation with, *inter alia*, the following conditions: (1) six months of imprisonment as to Count I; (2) thirty days of imprisonment as to Count II, to be served concurrently; and (3) payment of a $100 Crime Victim Compensation fee. On June 26, 2002, Appellant filed a timely notice of appeal.

**3.** Appellant did not dispute the validity of one of the four prior DUI convictions.

**4.** HRPP Rule 11 sets forth a number of requirements that must be met before a trial court may accept a plea of guilty or *nolo contendere*. Among these is the requirement that trial court personally address the defendant in open court and determine that the defendant understands the following:
(1) the nature of the charge to which the plea is offered; and
(2) the maximum penalty provided by law and the maximum sentence of extended term of imprisonment, which may be imposed for the offense to which the plea is offered; and
(3) that he has the right to plead not guilty, or to persist in that plea if it has already been made; and
(4) that if he pleads guilty or *nolo contendere* there will not be a further trial of any kind, so that by pleading guilty or *nolo contendere* he waives the right to a trial; and
(5) that if he is not a citizen of the United States, a conviction of the offense for which he has been charged may have the consequences of deportation, exclusion from admission to the Unites States, or denial of naturalization, or denial of naturalization pursuant to the laws of the United States.
HRPP 11(c). The trial court's findings of fact and conclusions of law, filed on July 11, 2002,

## II. STANDARDS OF REVIEW

### A. Conclusions of Law

 A trial court's conclusions of law are reviewed *de novo*. *State v. Poohina*, 97 Hawai'i 505, 508, 40 P.3d 907, 910 (2002). "Under this standard, [the appellate court] examine[s] the facts and answer[s] the question without being required to give any weight to the trial court's answer to it. Thus, a conclusion of law is not binding upon the appellate court and is freely reviewable for its correctness." *Id.* (quoting *Chun v. Board of Trustees of Employees' Retirement Sys.*, 92 Hawai'i 432, 438–39, 992 P.2d 127, 133–34 (2000)) (citations, internal quotations marks, brackets, ellipsis omitted).

### B. Statutory Interpretation

 This court reviews a circuit court's interpretation of a statute *de novo*. *State v. Entrekin*, 98 Hawai'i 221, 225, 47 P.3d 336, 340 (2002).

### C. Confession of Error

 In "confession of error" cases, appellate courts have an independent duty "first to

were based on a review of transcripts from the prior proceedings. The defects noted by the trial court included: (1) the absence of a Tongan interpreter; (2) failure to address Appellant personally regarding his constitutional rights and failure to ascertain whether Appellant understood the charges against him and the consequences of a guilty plea; (3) failure to inform the Appellant that the court was not bound by the plea agreement; and (4) failure to ascertain whether a factual basis for the charge existed. The trial court's order expresses no conclusion regarding the validity of the prior convictions.

**5.** In reaching its conclusions of law, the trial court relied on *State v. Lobendahn*, 71 Haw. 111, 784 P.2d 872 (1989). Briefly, *Lobendahn* involved a statute that criminalized possession of a firearm by a convicted felon. *Lobendahn*, 71 Haw. at 112, 784 P.2d at 872–73. In *Lobendahn* we held that, inasmuch as the statute created a "status offense," the subsequent invalidation of the predicate felony conviction did not affect the validity of the criminal possession charge because the defendant was "a convicted felon at the time he possessed the firearm and ammunition. Such possession was unlawful and the subsequent reversal of the conviction does not then render such possession lawful." *Id.* at 113, 784 P.2d at 873.

ascertain that the confession of error is supported by the record and well-founded in law and second to determine that such error is properly preserved and prejudicial." *Hoang*, 93 Hawai'i at 336, 3 P.3d at 502 (internal quotation marks, citations, brackets, ellipsis omitted). In other words, "a confession of error by the prosecution is not binding upon an appellate court, nor may a conviction be reversed on the strength of the prosecutor's official action alone." *Id.* (internal quotation marks, citation, ellipsis, and brackets omitted).

## III. DISCUSSION

Appellant contends that the trial court erred when it failed to dismiss the habitual DUI charge because three of his prior DUI convictions were constitutionally invalid and, therefore, could not serve as the predicate for convicting him under HRS § 291–4.4.

### A. Shimabukuro Is Not Controlling.

As a preliminary matter, we address the prosecution's reliance on *Shimabukuro* for its conclusion that the judgment of the court announced in that case compelled dismissal. The prosecution viewed *Shimabukuro* as establishing that "the requisite prior DUI convictions [necessary to sustain a habitual DUI charge] must be *valid.*" The prosecution necessarily construed *Shimabukuro* as permitting a defendant to collaterally attack the constitutional "validity" of his or her prior DUI convictions and as barring the use of any convictions whose constitutional validity was subsequently deemed questionable. Thus, because the trial court had entertained Appellant's collateral attack on three of his prior DUI convictions and made findings that impeached the constitutional validity of Appellant's earlier guilty pleas, the prosecution concluded that Appellant's habitual DUI conviction had to be vacated and the case remanded for entry of a judgment of guilt as to the DUI included offense. The prosecution's application of *Shimabukuro*, however, is flawed.

Initially, it must be emphasized that *Shimabukuro* produced no majority opinion and, therefore, the precedential value of the opinion announcing the judgment of the court is limited.[6] *Cf. University of Texas Medical Branch at Galveston v. York*, 871 S.W.2d 175, 176–77 (Tex.1994) (citing Linda Novak, Note, *The Precedential Value of Supreme Court Plurality Decisions*, 80 Colum. L.Rev. 756, 756–58 and 779 (1987)); *see also LaRouche v. Fowler*, 77 F.Supp.2d 80, 84 (D.C.Cir.1999) (noting the difficulties of treating as binding precedent a court ruling that produces no majority opinion). In addition, it must be noted that *Shimabukuro* did not require this court to reach a consensus as to whether a defendant must be permitted to collaterally attack prior DUI convictions within the context of trial proceedings on a subsequent DUI offense.

Central to the judgment announced in *Shimabukuro*, which also involved a prosecution under HRS § 291–4.4, was the fact that the defendant in that case (Shimabukuro) had succeeded in having one of his prior convictions vacated by the rendering court prior to entering his conditional guilty plea. *Id.* at 331, 60 P.3d at 281 (Levinson, J., concurring separately and joined by Moon, C.J.). A majority of this court agreed, albeit for different reasons, that the vacated conviction could not be used to establish culpability under HRS § 291–4.4. *See id.* at 327–28, 60 P.3d at 277–78 (Acoba, J., announcing the judgment of the court) (construing HRS § 291–4.4 as requiring that the predicate DUI convictions be "valid" and noting that, because "one of [d]efendant's three prior convictions was vacated on the ground that it was unconstitutionally obtained[,]" the defendant lacked the requisite number of convictions) (emphasis added); *id.* at 331 n. 5, 60 P.3d at 281 n. 5 (Levinson, J., concurring separately and joined by Moon, C.J.) ("For purposes of my analysis, it makes no difference whether the vacated conviction was, in the first instance, 'unconstitutionally obtained' or defective for some other reason. The inescapable fact is that, at the time he was sentenced as a 'habitual' DUI offender,

6. Justice Acoba's opinion announced the judgment of the court. Justice Levinson authored a separate opinion, concurring in the result, but based on different legal grounds. He was joined by Chief Justice Moon. Justice Nakayama, joined by Justice Ramil, authored a dissenting opinion.

Shimabukuro had **not** been convicted three or more times for a [DUI] offense." (Underscored emphasis added.) (Bold emphasis in original.)). Insofar as none of Appellant's prior DUI convictions in the present case had been vacated at the time he pled guilty, *Shimabukuro* is not controlling.

### B. *The Prior DUI Convictions Satisfied The Requirements Of HRS § 291–4.4.*

■ The plain language of HRS § 291–4.4 indicates that, to obtain a conviction on a habitual DUI charge, the prosecution must prove that a defendant, arrested for a DUI offense, "has been convicted three or more times for a [DUI] offense" within the ten-year period prior to that arrest. In the absence of a statutory definition or any legislative history to suggest otherwise, this court should construe the words of a statute according to their "most known and usual signification." HRS § 1–14. We, therefore, hold that the term "conviction," as used in HRS § 291–4.4, means any judgment or plea that has not been expunged by pardon, reversed, or set aside at the time a defendant is found guilty of the habitual DUI charge. *See Black's Law Dictionary,* 333–34 (6th ed.1990) (providing a general definition of the term "conviction" as it is commonly understood). It is undisputed that Appellant's four prior DUI convictions had not been expunged, reversed, or set aside at the time he pled guilty and, therefore, satisfied the requirements of HRS § 291–4.4.

### C. *The Right To Collaterally Attack Prior Convictions Is Strictly Limited.*

■ Appellant contends that, even when not expunged, reversed, or set aside, prior convictions used to establish guilt or enhance punishment must be disregarded if, upon collateral attack, they are determined to have been unconstitutionally obtained. We, therefore, examine whether a defendant has the right to collaterally attack prior convictions in the context of trial proceedings for a subsequent offense. For purposes of this analysis, the term "collateral attack" refers to Appellant's "attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree."[7] *State v. Grindling,* 96 Hawai'i 402, 405, 31 P.3d 915, 918 (2001) (citation omitted); *see also Kapiolani Estate v. Atcherly,* 14 Haw. 651, 661 (Terr.1903), *rev'd on other grounds,* 238 U.S. 119, 35 S.Ct. 832, 59 L.Ed. 1229 (1915) ("if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral") (internal quotation marks and citations omitted).

#### 1. Recognized exception to the general rule prohibiting collateral attacks

■ Appellant does not dispute that, "[a]s a general rule, a collateral attack may not be made upon a judgment or order rendered by a court of competent jurisdiction." *Grindling,* 96 Hawai'i at 405, 31 P.3d at 918. Neither does he argue that HRS § 291–4.4 confers such a right. Instead, he relies for authority on a line of cases emanating from *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). In *Burgett,* the United States Supreme Court recognized the right of a defendant to collaterally attack predicate prior convictions alleged to have been obtained in violation of the right to counsel. *Id.* at 114–15, 88 S.Ct. 258. With rare exceptions, which are not relevant to this case, *see, e.g., Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the Court has held that it would be unconstitutional "[t]o permit a conviction obtained in violation of *Gideon v. Wainright[,*

---

7. It is undisputed that Appellant's motion to dismiss amounted to a collateral attack. In his memorandum in support of the motion, Appellant argues that "collateral attacks on prior convictions are authorized in Hawai'i." *See also Parke v. Raley,* 506 U.S. 20, 30, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (Respondent who challenged the constitutional validity of prior convictions in the context of a separate recidivism proceeding, "by definition, collaterally attacked his previous convictions [because] he sought to deprive them of their normal force and effect in a proceeding that had an independent purpose other than to overturn the prior judgments."); *State v. Lee,* 251 Neb. 661, 558 N.W.2d 571, 574 (1997) ("The challenge of a prior plea-based conviction ... constitutes a collateral attack on the judgment.").

372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963),] to be used against a person *either to support guilt or enhance punishment* for another offense[.]" *Id.* at 115, 83 S.Ct. 792 (emphasis added). This language has been construed as rendering the *Burgett* rule equally applicable to proceedings in which the existence of the predicate prior convictions is necessary to establish an element of an offense as well as proceedings in which the existence of prior convictions may be a factor in sentencing. Consistent with this federal constitutional mandate, we have recognized a similar right under our state constitution. *See, e.g., State v. Kamae,* 56 Haw. 628, 638–39, 548 P.2d 632, 639 (1976) (trial court erred in relying on prior uncounseled conviction to determine that defendant was a multiple offender and that extended sentence was appropriate); *State v. Vares,* 71 Haw. 617, 621, 801 P.2d 555, 557 (1990) (prior uncounseled DUI conviction could not be used to convict defendant as a third-time DUI offender); *see also State v. Sinagoga,* 81 Hawai'i 421, 443 n. 19, 918 P.2d 228, 250 n. 19 (App.1996) (noting that, in Hawai'i, all uncounseled convictions are invalid and outlining procedure whereby a defendant may challenge the use of prior uncounseled convictions to impose or enhance any sentence.)

2. **The right to collaterally attack prior convictions in the context of proceedings on a subsequent offense does not extend to convictions based on allegedly invalid guilty pleas.**

The outcome of this case depends in large part on whether we accept Appellant's premise that, within the context of trial proceedings on a subsequent offense, defendants have a right to collaterally attack prior convictions that are the result of allegedly invalid pleas. The federal constitution recognizes no such right. In *Custis v. United States,* 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), the United States Supreme Court made it clear that the right to mount a collateral attack did not extend beyond situations where the prior convictions were obtained in violation of the right to counsel. *Id.* at 496, 114 S.Ct. 1732. *Custis* involved a charge under a federal statute that subjected a defendant, found to have been in unlawful

possession of a firearm, to an increased penalty "whenever [the] defendant was [also] found to have suffered 'three previous convictions' of the type specified." *Id.* at 491, 114 S.Ct. 1732. Custis challenged his predicate convictions claiming, *inter alia,* that they were obtained as the result of invalid guilty pleas. *Id.* at 496, 114 S.Ct. 1732. The Court declined to extend its holding in *Burgett,* emphasizing that the failure to appoint counsel was a "unique constitutional defect" because it "rises to the level of a jurisdictional defect[.]" *Id.* at 496, 114 S.Ct. 1732. The Court held that a conviction obtained as the result of an involuntary guilty plea was not similarly defective from a jurisdictional standpoint and, thus, could not be collaterally attacked in a separate proceeding. *Id.*

The Court highlighted the following considerations in support of its holding limiting collateral attacks to those involving a violation of the right to counsel:

> Ease of administration also supports the distinction. As revealed in a number of the cases cited in this opinion, failure to appoint counsel at all will generally appear from the judgment roll itself, or from an accompanying minute order. But determination of claims of ineffective assistance of counsel, and failure to assure that a guilty plea was voluntary, would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 States.

> The interest in promoting the finality of judgments provides additional support for our constitutional conclusion. As we have explained, "[i]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures" and inevitably delay and impair the orderly administration of justice. We later noted in *Parke v. Raley,* 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), that principles of finality associated with habeas corpus actions apply with at least equal force when a defendant seeks to attack a previous conviction used for sentencing. By challenging the previous conviction, the defendant is asking a district court "to deprive [the]

[state-court judgment] of [its] normal force and effect in a proceeding that ha[s] an independent purpose other than to overturn the prior judgmen[t]." *Id.* at 30 [113 S.Ct. 517]. *These principles bear extra weight in cases in which the prior convictions, such as one challenged by Custis, are based on guilty pleas, because when a guilty plea is at issue, "the concern with finality served by the limitation on collateral attack has special force."* United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) (footnote omitted).

*Id.* at 497, 114 S.Ct. 1732 (some internal citations omitted) (brackets in original) (emphasis added).

Of course, the fact that the federal constitution recognizes only a limited right to collaterally attack prior convictions does not mean that similar limitations need be imposed under our state constitution. *State v. Lopez,* 78 Hawai'i 433, 445, 896 P.2d 889, 901 (1995) ("[I]t is well-established that[,] as long as we afford defendants the minimum protection required by the federal constitution, we are free to provide broader protection under our state constitution." (Citations omitted.)). A survey of case law from other jurisdictions indicates that various states addressing this issue have found *Custis* persuasive. As a result, they have declined to extend the right to collaterally attack prior convictions beyond what is mandated by the federal constitution or specifically provided for by statute.

For example, in *State v. Chiles,* 260 Kan. 75, 917 P.2d 866 (1996), the Kansas Supreme Court reasoned that,

if a defendant is allowed under the Constitution to collaterally attack the underlying felony when charged with [a crime that requires the presence of a prior conviction as an element for the offense], then the court ruling on [that crime] would be required to look behind the underlying conviction, which could have occurred in any other state, and determine if it was valid. This does not make good policy. Instead the time for a defendant to attack the underlying conviction is on an appeal when

originally convicted of the underlying crime or in a habeas corpus proceeding. *Id.* at 870.

Similarly, the Wisconsin Supreme Court, after initially extending the *Burgett* rule to encompass collateral attacks on prior convictions alleged to have been obtained as the result of involuntary guilty pleas, has limited the availability of collateral attacks on prior convictions. *See State v. Hahn,* 238 Wis.2d 889, 618 N.W.2d 528, 531 (2000). In *Hahn,* which involved a recidivist statute that provided for mandatory life imprisonment for third-time offenders of specified criminal statutes, the court analyzed

whether it should, as a matter of judicial administration rather than as a matter of federal constitutional right, allow an offender to challenge a [predicate] prior state conviction in an enhanced sentence proceeding on grounds other than an alleged violation of the constitutional right to a lawyer, or whether [it] should require an offender to use [other] available procedures ... to challenge a prior conviction.

*Id.* at 534. After reviewing the policy considerations articulated in *Custis* and deeming them equally relevant to state court proceedings, the Wisconsin court limited a defendant's ability to collaterally attack prior convictions in proceedings related to a subsequent offense by concluding that an "offender may use whatever means [are] available under state law to challenge the validity of a prior conviction on other grounds in a forum other than the enhanced sentence proceeding. If successful, the offender may seek to reopen the enhanced sentence." *Id.* at 535.

Other jurisdictions have reached similar conclusions without the benefit of the reasoning articulated in *Custis.* For example, a year before *Custis* was announced, the Maryland Court of Appeals adopted an analogous approach in *Fairbanks v. State,* 331 Md. 482, 629 A.2d 63 (1993). In limiting a defendant's ability to collaterally attack prior convictions in the context of proceedings on a subsequent offense, the Maryland court concluded that there were significant benefits to "requiring that a defendant seeking to challenge a facially valid prior conviction utilize estab-

lished procedures[,]" such as a writ of *habeas corpus* or *coram nobis*, to have the judgment vacated or set aside. *Id.* at 65. For example, in the context of post-conviction proceedings, a defendant would be required to

> allege with specificity the claimed deficiencies, thus allowing the State a reasonable opportunity to investigate, respond, and prepare a defense. Prior proceedings, including any direct appeals and previous collateral challenges, can be explored, with concomitant opportunity to determine whether the issues have been previously litigated, waived, or are otherwise barred by prior proceedings. *See, e.g.,* [provision of Maryland code], providing that a person may not file more than two petitions arising out of each trial for relief under the Post Conviction Procedure Act.
>
> Because a facially valid conviction is entitled to a strong presumption of regularity, this procedure clearly places the burden of proof where it should be—upon the defendant attacking the conviction. . . . Requiring that a collateral attack of this type be brought in accordance with established procedures offers an additional benefit: if the defendant is successful in having a conviction overturned, the trial judge may grant full relief by ordering a new trial [where it would be constitutionally permissible to do so].

*Id.* at 65–66. The court emphasized, however, that:

> A defendant who is prevented from challenging the constitutionality of a prior conviction at trial or during a sentencing proceeding is not thereby divested of an opportunity for relief. That defendant may thereafter mount a . . . challenge by

any means that remain available, including post-conviction procedures, habeas corpus, error *coram nobis*, or other statutory or common law remedies. If successful, the defendant may possibly then challenge the conviction or sentence affected by the use of the constitutionally infirm conviction.

*Id.* at 68. Similarly, in *Williams v. State,* 431 N.E.2d 793 (Ind.1982), *cert. denied,* 481 U.S. 1054, 107 S.Ct. 2191, 95 L.Ed.2d 846 (1987), the Indiana Supreme Court held that:

> The issues of a defendant's guilt or innocence of prior crimes of which he has been convicted are not before the trial court in an habitual criminal hearing. That is not the proper forum to contest the legality of those prior sentences by way of collateral attack. The only issue before the trial court is whether or not appellant has, in fact, been found guilty and sentenced as required under the statute of prior offenses.

*Id.* at 795–96 (citations omitted).

■ We are persuaded by the reasoning of the aforementioned decisions and, therefore, hold that a defendant may not collaterally attack prior counseled DUI convictions on the basis that they were obtained as the result of allegedly invalid guilty pleas.[8] Challenges to the constitutional validity of prior convictions alleged to have been obtained as the result of invalid guilty pleas must be raised either through a direct attack or pursuant to HRPP Rule 40, which encompasses all common law and statutory procedures for post-conviction relief, and not in proceedings related to a subsequent habitual DUI offense.[9] Where a defendant succeeds

---

8. We recognize the tension between our holding and dictum in *Sinagoga*. In *Sinagoga,* the Intermediate Court of Appeals (ICA) was required to resolve the issue of whether a sentencing court could consider a defendant's prior *uncounseled* convictions in determining whether consecutive terms of imprisonment were warranted. *Sinagoga,* 81 Hawaiʻi at 435, 918 P.2d at 242. The ICA expressly held that the sentencing court could properly rely only upon prior *counseled* convictions, *id.,* but proceeded to outline a procedure whereby defendants could challenge convictions appearing in a presentence report on the basis that they were "(1) uncounseled, (2) *otherwise invalidly entered,* and/or (3) not against the defendant[.]" *Id.* at 446, 918 P.2d at 253 (emphasis

added). Because the "otherwise invalidly entered" language in *Sinagoga* may be construed as permitting collateral attacks whenever the validity of a conviction is challenged, we emphasize, in light of our holding today, that this language should be disregarded.

9. We recognize that the availability of post-conviction relief varies from state to state and that in some circumstances justice might require that a defendant be allowed to collaterally attack a prior conviction rendered in another jurisdiction. *Cf. Farmer v. Administrative Director of Court, State of Hawaiʻi,* 94 Hawaiʻi 232, 241, 11 P.3d 457, 466 (2000). That is not, however, the case

in having a prior conviction expunged, reversed, or set aside, its use in connection with proceedings relating to subsequent offenses will be limited. Similarly, a defendant who succeeds in having prior convictions expunged, reversed, or set aside *after* they have been used to support guilt or enhance punishment in subsequent proceedings may have a basis for attacking that subsequent conviction or enhanced punishment. *See, e.g., Hahn,* 618 N.W.2d at 535 ("If the offender succeeds [in challenging the validity of a prior conviction in an appropriate forum], the offender may seek to reopen a sentence imposed as a persistent repeater under [the Wisconsin recidivist statute] if that sentence was based on the vacated conviction."). Finally, we note that, because the trial court had no authority to entertain a collateral attack on the prior convictions, its findings will have no preclusive effect should Appellant seek to have his prior convictions reviewed in a proper forum and in accordance with the proper procedures.

## IV. *CONCLUSION*

Based on the foregoing, we affirm Appellant's judgment of conviction and sentence.

Concurring Opinion by ACOBA, J.

I agree for the sake of the orderly administration and disposition of cases that a collateral attack on a prior conviction should not be allowed in the trial proceedings in which the prior conviction is an element to be proven. *But see, e.g., People v. Allen,* 21 Cal.4th 424, 87 Cal.Rptr.2d 682, 981 P.2d 525, 535–38

(1999) (holding that since the California Supreme Court has required a colloquy as to a defendant's constitutional rights, the "record [from the prior proceeding] should clearly demonstrate the defendant was told of his rights and that he affirmatively waived them[,]" and because of this ease of administration, "motions to strike prior felony convictions" in a subsequent trial are permitted). I do not find the reasoning in *Custis v. United States,* 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), relied on by the majority, applicable because the motivating factors there were based on federalism concerns of (1) "rummag[ing] through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 States[ ]" and (2) " 'depriv[ing] the state-court judgment] of [its] normal force and effect in a proceeding that ha[s] an independent purpose other than to overturn the prior judgment[s].' " *Id.* at 497, 114 S.Ct. 1732 (quoting *Parke v. Raley,* 506 U.S. 20, 30, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992)) (brackets in original). As indicated by the majority, the constitutional invalidity of a prior conviction, which seems to have been conclusively established in this case, may still be determined in subsequent collateral proceedings.

here. All of the prior convictions challenged by Appellant were rendered by Hawai'i district courts, and there is nothing in the record to

suggest that he was precluded from having them reviewed in the proper forum and through the proper procedures.